## TOWN OF UNDERHILL *v.* TOWNS OF ESSEX, JERICHO AND WILLISTON.

*Maintenance of bridge not within the limits of a town.  Vacation of previous assessment.  No. 16 Acts of 1886.  No. 18 Acts of 1884.  Vested rights.  Strafford v. Sharon, 16 Vt. 126, criticized.*

1. Under No. 16 Acts of 1886, amending No. 18 Acts of 1884, which related to the maintenance of highways and bridges by towns benefited thereby, no town can be compelled to contribute to the expense of maintaining a highway or bridge not wholly or in part within its limits. The only effect of that act is to provide a method by which towns already assessed for such contribution can have that assessment vacated

2. No vested right was created by a judgment under the law as it formerly stood assessing a town for a portion of the expense of maintaining a highway or bridge not within its limits. *Strafford* v. *Sharon* 61 Vt. 126, so far as it rests upon this ground, criticized.

This was a petition by the town of Underhill asking to be relieved from a judgment assessing it for the support of a bridge between the towns of Williston and Essex. The case was referred to commissioners, and was heard upon their report at the September term, 1890, Chittenden county, Rowell, J., presiding. The court apportioned the expense of maintaining the bridge between the towns of Williston, Essex, and Jericho, and released the town of Underhill from further expense. To this judgment the town of Jericho excepted.

*M. H. Alexander, and Seneca Haselton,* for Jericho.

The town of Jericho cannot be made liable for any part of the expense of maintaining this bridge, since it is situated wholly

within the towns of Essex and Williston. *Tunbridge & Chelsea* v. *Royalton*, 58 Vt. 212; *Wardsboro* v. *Jamaica*, 59 Vt. 514; Act No. 18, Laws of 1884, s. 6; Act No. 16, Laws of 1886, s. 7.

No vested right was created by the former judgment in favor of Essex and Williston. A town is a municipal corporation, created for political purposes, and the legislature may make or repeal any law relating to them. Cooley Const. Lim., 6th Ed. pp. 228–9; Dillon Mun. Cor., 4th Ed., 54, 63 and notes; Endlich Interp. St., s. 284, p. 385; *Groff* v. *Mayor*, 44 Md. 67; *United States* v. *Railroad Co.*, 17 Wall, 322; *Barnes* v. *District of Columbia*, 1 Otto 540; *People* v. *Morris*, 13 Wend. 325; *Pye* v. *Peterson*, 45 Tex. 312; *Philadelphia* v. *Fox*, 64 Penn. St. 169; *Sloane* v. *State*, 8 Blackf. (Ind.) 361; *Clinton* v. *Cedar Rapids R. R. Co.*, 24 Iowa, 455; *Mayor, etc.* v. *Shener*, 37 Md. 180; *Yeathn et al.*, v. *U. S.*, 2 Pet. 256; *Rachel* v. *U. S.*, 2 Pet. 388; *Commonwealth* v. *Bird*, 12 Mass., 443; *Palmer* v. *Overseer*, 3 Wend. 193; *Bates* v. *Kimball*, 2 D. Chip. 79; *Pratt* v. *Jones*, 25 Vt. 303; *Huie* v. *Pomeroy*, 39 Vt. 211; *Wardsboro* v. *Jamaica*, 59 Vt. 514.

Every reasonable presumption should be made in favor of the constitutionality of this law. *Bennington* v. *Park*, 50 Vt. 178; *Drew* v. *Hilliker*, 56 Vt. 641; *In re Hackett*, 53 Vt. 357; 41 Mo. 63.

*W. L. Burnap and M. A. Bingham* for Williston and Essex.

Taking R. L. ss. 2960–2966, 2975–2978 as amended by No. 18 Acts 1884, and No. 16 of 1886, the town of Jericho may be assessed towards the support of this bridge, although the same is not situated within its limits.

Even if that is not so, a vested right was created by the original judgment which cannot be impared so long as the condition of things remains the same. *Stafford* v. *Sharon*, 61 Vt. 126.

The opinion of the court was delivered by

ROSS, Ch. J.    By the judgment of the Chittenden County Court in 1859, the towns of Underhill and Jericho were assessed to assist the towns of Essex and Williston in the erection and maintenance of a bridge across the Winooski river between the towns last named, on the ground that the former towns would be benefited thereby.    This is a petition brought by the town of Underhill in 1888, asking that the original cause be brought forward upon the docket of the court, and a new assessment or apportionment be made, and that Underhill might be released.    On the report of commissioners appointed to hear and report the facts and make a new apportionment of the expense of maintaining the bridge, the court rendered judgment apportioning a part of such expense to the town of Jericho.    To this judgment the town of Jericho excepted, claiming that the law had been so changed that it was no longer liable to contribute to such expense.    This is the question presented for consideration.

Before the passage of No. 18 of the Acts of 1884, towns benefited by the building and maintaining of a highway or bridge located in other towns, when the town or towns in which they were located would be excessively burdened by building and maintaining them unaided, could be assessed therefor.    R. L. 2960 to 2966, 2975 to 2979, and No. 16 Acts of 1882.    No. 18 of the Acts of 1884 provides in s. 1,    " No town shall be assessed toward the expense of maintaining any highway or bridge in another town, or of building any such highway or bridge except as provided in sections 2958 and 2959 of Revised Laws and as hereinafter provided."    The provisions of this act referred to were repealed by s. 7 of No. 16 of Acts of 1886 and need not be considered in full.    It continues in force and extends the application of R. L. 2978 and 2979.    R. L. 2978 relates to the building and maintaining of a bridge between two towns, and gives the court power to reapportion the expenses thereof every five years between the towns in which the bridge is located and

other towns benefited. R. L. 2979 gives towns required to build and maintain a bridge on or near the line of two or more towns by an act of the legislature, the right to have the expenses thereof reapportioned every five years. Section 7 of No. 18 of the Acts of 1884 repeals R. L. 2975 to 2977, which gave to the court power to relieve and assist a town excessively burdened by being required to build a bridge or highway wholly therein by assessing other towns benefited in the vicinity, and also repeals No. 16 of the Acts of 1882 relating to the same subject matter. It also repeals " all acts and parts of acts inconsistent herewith." The contention is whether that part of R. L. 2960 to 2966, which gives the court power to apportion a part of the expense of a bridge over a stream between two towns to other towns benefited, is repealed as inconsistent with the provisions of No. 18 of the Acts of 1884. The towns of Essex and Williston contend that these sections provide for an assessment of other towns benefited, and the sections 2975 to 2977, repealed in terms, relate to giving relief to towns excessively burdened by building and maintaining a bridge or highway wholly within such towns. But such relief is given by casting a part of the excessive burden upon other towns in the vicinity, especially benefited thereby. The assessment upon other towns under both of these provisions of the Statute is made upon the same general basis of benefit. The whole of ss. 2960 to 2966 could not be repealed without repealing necessary provisions for apportioning the expense of such bridge between the towns which it connects. Besides, No. 18 of the Acts of 1884 applies to a bridge across a stream between two towns inasmuch as it leaves s. 2978, which relates to that subject, in force, and makes it applicable not only to a bridge between two towns, but generally to highways and bridges wholly in one town. The provisions of R. L. 2960 to 2966, for the assessment of other towns benefited by a bridge across a stream between two towns are inconsistent with the provisions of No. 18 of the Acts

of 1884. This act starts with the declaration, " *No town* shall be assessed toward the expense of maintaining *any highway or bridge in another town,* or of building *any such highway or bridge,* except as provided in sections 2958 and 2959 of the Revised Laws, and as hereinafter provided." It then proceeds to make the provisions of the excepted sections of the Revised Laws, which originally were applicable only to a bridge between two towns or on or near the line of two or more towns, applicable to all highways and bridges. This clearly manifests an intention of the Legislature to place all bridges and highways, wherever located, upon a common basis, and to give the same relief to the towns primarily liable for their erection and maintenance against other towns benefited. Hence we think the inconsistent provisions of ss. 2960 to 2966, or those relating to assessing a portion of the expense on other towns benefited, were repealed by s. 7 of No. 18 of Acts of 1884. And when by section seven of No. 16 of the Acts of 1836, ss. 2, 3, 4, 5 & 8, and part of s. 6 of No. 18 of the Acts of 1884 were repealed, there was of the act of 1884 left only the provision of s. 6, which provides a method by which " any town assessed towards the expense of maintaining or repairing any bridge or highway in another town " might procure the vacation of the assessment. Under this construction of the law, which is in accord with *Tunbridge & Chelsea* v. *Royalton,* 58 Vt. 212, and *Wardsboro* v. *Jamaica,* 59 Vt. 514, it was error for the County Court to impose any portion of the burden of maintaining the bridge across the Winooski River between Essex and Williston upon the town of Jericho. After the passage of the law of 1886, relief to these towns in maintaining the bridge, if any, must be sought from the State, agreeably to the provisions of No. 16 of the Acts of 1886.

II. But the towns of Essex and Williston contend that under the decision of *Strafford* v. *Sharon,* 61 Vt. 126, they acquired by the judgment in 1859 a vested right to have the town of Jericho assist in maintaining the bridge so long as the latter con-

tinued to be benefited by its maintenance. The decision of *Strafford* v. *Sharon* was made by a divided court, and some members who did not join in the dissenting opinion, gave their assent upon the ground first developed in the opinion, which does not rest upon the doctrine of vested rights. If the doctrine of vested rights is applicable in such cases, a town once assessed can never be relieved so long as the conditions exist upon which the assessment was made. This is contrary to the action of the Legislature, and the tenor of the decisions of this court. Highways and bridges, their establishment and maintenance have ever been regarded as within legislative control. The right to have and enjoy them arises from public necessity. It does not exist in a town in its corporate capacity. So far as its inhabitants are a part of the public, they are interested in the exercise of the right, but no further. It is a right inherent in the State. In exercising this right, the right of eminent domain, which rests in the State, is invoked. The State might assume the entire burden attendant upon its exercise, but it has placed it on such municipalities as it has thought equitable, and varied it from time to time, to suit circumstances, or public policy. A petition to have a highway or bridge established or maintained, is a proceeding taken in behalf of the public to have determined, in the manner provided by statute, whether the public good requires the establishment of the proposed highway or bridge, and, if it is found that public good requires its establishment, to determine according to the statute, on what municipality or municipalities the burden shall fall. It is, in no sense, a suit in which one town has, as such, any corporate right, or interest, more than another. It is for the corporate interest of all the towns of the State, so far as regards the inhabitants of each, that all necessary highways and bridges shall be established and maintained. But the easement taken for their establishment, though taken at the expense of a particular town, does not create a property right

therein, in such town, further than possibly the right to the materials which it has provided and used in the construction of the highway or bridge. The proceeding, for the establishment of a highway, or for determining what towns shall bear the burden of its establishment, is not a suit which involves any corporate right or property of the towns, except indirectly in reference to how much the towns shall respectively contribute towards the public burden. The right to have these burdens borne, and to prescribe how they shall be borne rests in the State. The State through its legislature, may prescribe from time to time, the manner in which such burdens shall be borne, and change the manner, at its pleasure. The legislature has power to revoke charters of towns which it has granted, and set the territory, embraced therein, into other towns, yet if the doctrine of vested rights applies in a case in which the proportion which two or more towns shall contribute towards the maintenance of a highway or bridge has been determined, and that proportion is forever thereafter fixed, then by prescribing and having judicially determined the share which such town shall bear, the legislature not only loses the right to take away the charter of either town, but to change the method of bearing such public burden. It could not even relieve the towns interested from the entire burden; because the towns would have a vested interest therein. The statement of the reach of the contention is its refutation. So far as the decision of *Strafford* v. *Sharon* is placed on the doctrine of vested rights, we do not think it is grounded either in principle, or reason.

*The judgment is reversed, and judgment rendered that under the law Jericho cannot be assessed and that the expense of maintaining the bridge be borne by Essex and Williston, in the proportions reported, and that Jericho recover its costs.*

Taft, J., being a tax payer in Williston, did not sit.