Will Shumpert, Plaintiff-Appellant, v. Chicago Transit Authority, a Municipal Corporation, Defendant-Appellee.

Gen. No. 48,211.

First District, Third Division.

April 5, 1961.

E. Anne Mazur and Alexander J. Ross, of Chicago (Alexander J. Ross, of counsel) for appellant.

William J. Lynch, William S. Allen, Erwin Wright and Jerome F. Dixon, all of Chicago, for appellee.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

This is a suit for injury to health alleged to be the result of an occupational disease contracted by plaintiff while in the employ of defendant. The trial court sustained a motion to dismiss on the ground that the complaint failed to show that notice was served on defendant within six months of the alleged injury, as required by section 341, ch. 111–2/3 of the Illinois Revised Statutes, 1959. The sole question presented to us is whether the six months notice requirement applies to a suit of this character.

We will first examine the nature of plaintiff's case. No such action existed at common law. It is a creature of statute. Ill. Rev. Stat., ch. 48, sec. 172.38 (1953). That statute gives a cause of action to an employee who has sustained an "injury to health or death by reason of a disease" contracted in the course of employment and caused by the negligence of the employer, unless the employer has elected to pay compensation as provided in another section of the act.

233

Defendant did not so elect. The statute provides that action shall be commenced within three years after the last day of the *last exposure to the hazards of the disease,* and every action on account of death shall be commenced within one year after the death of the employee and within five years after the *last day of the last exposure.* Ch. 48, sec. 172.38, supra. Thus, with respect to an occupational disease action, the legislature has not only extended the limitation period, but has based it upon the last day of the last exposure, indicating clearly that because of the obvious difficulties of detection and diagnosis, this kind of action deserves special treatment.

The act relating to notice to be given the defendant is quite different. Ch. 111-2/3, sec. 341, supra. That act provides that an action against the Authority for an injury to the person must be commenced within one year from the date of the injury or the date the cause of action accrued. The act further provides as follows:

"Within six (6) months from the date *that such an injury was received or such cause of action accrued,* any person who is about to commence any civil action . . . on account of any injury to his person shall file . . . a statement in writing, . . . giving . . . the date and about the hour of the accident, the place or location where the accident occurred, and the name and address of the attending physician, if any." (Italics added.)

The question thus presented to us may be stated as follows: Is the action created by the Occupational Disease Act within the terms defined by the section of the Metropolitan Transit Authority Act above set forth? We are of the opinion that it is not. It is, to be sure, a civil action, and the word "injury" or the

234

phrase "injury to the person" is broad enough to cover it, but when read in the context of the entire section it is clear that it was not so intended.

Several hundred words are used to define "injury" in Webster's New International Dictionary, 2nd Edition, including:

> "damage or hurt done to or suffered by a person . . . ; detriment to, or a violation of, person, character, feelings, rights, property or interests or the value of a thing."

The same authority gives the legal definition as:

> "an actionable wrong; that is, any violation of another's rights for which the law allows an action. . . . "

The synonyms are: "detriment, hurt, loss, impairment, evil, ill, injustice, wrong. . . . *Injury is a general term for hurt of any sort. . . .*" (Italics added.) This is sufficient to show the all-embracing character and ambiguity of the word itself.

For its meaning as used in a statute, we must look to context, purpose and those other rules which have long served as guides for interpretation. In the instant case, "injury to person" must be read in connection with the words defining the type of notice to be given. The notice required is notice of the date, hour and place of the accident. Thus, the word "injury" is equated with the word "accident," because the notice is required to state "where the accident occurred," which is another way of saying "where the injury took place." We must therefore read this statute as relating to an injury to the person which is the result of that type of accident which occurs at a particular hour and at a particular place. When the legislative intention was directed specifically to establishing a period of limitation on actions brought

235

pursuant to the Occupational Disease Act, it based the period, as we have hereinbefore pointed out, on the day the plaintiff was last exposed. Ill. Rev. Stat., ch. 48, sec. 172.38 (1953). Thus, the legislature recognized that the disease does not have an origin definite in time or place.

█ It has also been noted by courts that the distinction between an occupational disease and an accident causing personal injuries is that in the latter the accident is traceable to a definite time and place, and the former is a matter of slow development. Labanoski v. Hoyt Metal Co., 292 Ill. 218, 221, 126 N.E. 548–49; Matthiessen & Hegeler Zinc Co. v. Industrial Board, 284 Ill. 378, 120 N.E. 249; Adams v. Acme White Lead & Color Works, 182 Mich. 157, 148 N.W. 485; Raymond v. Industrial Com'n, 354 Ill. 586, 592, 188 N.E. 861, 863; In Matthiessen & Hegeler Zinc Co. v. Industrial Board, supra, the court commented on the broad meaning of the word "accident" and the different meanings given to the word where it is made the ground for equity jurisdiction, where it occurs in accident insurance, and as applied to injuries to a servant without the negligence of the master. It recognizes that the meaning of the word is necessarily influenced by the various provisons of the act and the purposes of its enactment and cannot be determined alone from any definition found in a dictionary, and then says, page 383, 120 N.E. at 251:

> "The words 'accident' and 'accidental injury' imply, and the provisions for notice to the employer within thirty days after an accident and his report to the Industrial Board of accidental injuries show, that an injury, to be accidental or the result of an accident, must be traceable to a definite time, place and cause. . . ."

A case which we think bears a strong analogy to the instant case is Prouty v. City of Chicago, 250 Ill.

222, 95 N.E. 147. That was an action for wrongful death. The defendant, as in the instant case, defended on the ground that notice had not been given to the city in accordance with the provisions of the act under consideration here. The court held that the wrongful death act, giving a right to a personal representative of the deceased to bring a suit "and recover the pecuniary injuries to the widow and next of kin occasioned by his death. . . ." was not an action for personal injury. If the broad definition of injury, as urged by defendant in the instant case, had been applied, pecuniary injuries suffered by a person would definitely come within the meaning of the words. It was held otherwise, because such broad terms must yield to the more obvious intention and purpose of the act.

Defendant's counsel refers to La Mie v. Chicago Transit Authority, 24 Ill. App. 2d 563, 165 N.E.2d 366, in which, he says, we defined "accident" as a "happening; an incident; an event." What we actually said was that, *as used in the instruction under consideration in that case,* the definition was proper.

We have had occasion to consider attempts to divine the meaning of words and phrases apart from reference to the context and purpose thereof. In Costello v. Warnisher, 4 Ill. App. 2d 571, 580, 124 N.E.2d 542, 546, we said:

> ". . . the contributions of many able scholars have made it clear that words can seldom be used to pinpoint an express and precise intention."

See, also, Illinois Cent. R. R. v. Michigan Cent. R. R., 18 Ill. App. 2d 462, 486, 152 N.E.2d 627, 638.

We hold that the court erred in sustaining defendant's motion to dismiss. The judgment is reversed and the cause is remanded with directions to overrule the motion to dismiss, and for such other and further

proceedings as are not inconsistent with the views herein expressed.

Judgment reversed and cause remanded with directions.

McCORMICK and DEMPSEY, JJ., concur.